Marshall, C. J.
This controversy originated in the municipal court of the city of Cleveland, where a statement of claim was filed by Dennert against the produce company, alleging that on December 15, 1917, the produce company purchased from Dennert a carload of potatoes at the agreed price of $1.75 per *150 cwt., that the produce company refused to accept the ear, and that by reason of the delay the potatoes were frozen and rendered worthless. The answer denied the contract as alleged, and further stated that on that date defendant did purchase a car of potatoes, which, on arrival, were found not to be according to specifications, and that the same were frosted and otherwise unmarketable. The answer further alleged that after it was found that the potatoes were unmarketable, and not in compliance -with the contract, an offer was made to take the car at $1.05 per cwt., provided defendant would be permitted to remove a part of the car for purposes of inspection; that upon further inspection the potatoes were found to be absolutely worthless, and were rejected for that reason. At the trial it developed that on November 15,1917, a conversation took place between a representative of the produce company and one Adams, a broker, in Cleveland, and that Adams as a result of that conversation sent an order to another broker at Grand Rapids, Michigan, which broker at Grand Rapids gave the order to Dennert. On arrival of the car of potatoes at Cleveland several weeks later, the car was inspected by a representative of the produce company, who notified Adams that the potatoes were not according to the contract, and thereupon Adams inquired what the potatoes were worth to the produce company. A further conversation between them on that date is contradictory, but it resulted in Adams sending a telegram to the Grand Rapids broker stating that the potatoes were undersized and not in good condition and that he was offered $1.75 per cwt. This telegram was sent December 4th, and on December 5th the Grand Rapids *151 broker replied by wire accepting the offer. In the meantime the produce company having further examined the car refused to have anything further to do with it, and the weather having turned colder the potatoes were frozen-and ruined.
At the trial the issues of fact which were developed were as to the conversation which took place between the produce company and Adams on December 4th, and whether the telegram sent by Adams was in accordance with the conversation, and whether therefore the offer made by Adams was authorized in order that its acceptance might constitute a valid contract. At the trial, evidence of communications between Adams and the Grand Rapids broker, and between the Grand Rapids broker and Dennert, were admitted in evidence, and the question arose as to whether Adams was the agent of Dennert and the Grand Rapids broker, and whether, therefore, such communications, which were not'known to the produce company, were competent. No jury was demanded and the case was heard before the judge of the municipal court.
The testimony was quite voluminous, and at the close of the testimony counsel for the produce company requested special findings of fact and law, and submitted a list of fifteen special interrogatories to be answered by the court in the event judgment should be for the plaintiff. The request for special findings and the submission of interrogatories was made pursuant to the provisions of Sections 11463, 11470 and 11471, General Code. Section 11470 is as follows: “When questions of fact are tried by the court, its finding may be general for the plaintiff or defendant, unless, with a view of excepting to the *152 court’s decision upon questions of law involved in the trial, one of the parties so requests, in which ease, the court shall state in writing the conclusions of fact found separately from the conclusions of law.”
It is not necessary to set out at length in this opinion the interrogatories, fifteen in number, but it is sufficient to state generally that they entered into such detail that the answers would have disposed of all of the important facts necessary to be determined in reaching a decision of the controversy. No explanation is offered or reason assigned for the trial judge not having answered the interrogatories, thereby furnishing the special findings of fact desired by counsel for the defendant in the trial court. Section 11470, General Code, was designed to serve a useful purpose and without regard to the wisdom of its provisions we are called upon in this case to determine whether its provisions give to parties a substantial right, or whether on the other hand its provisions may be ignored with impunity.
When causes are tried with the intervention of a jury the legal questions arise on admission and rejection of testimony, and upon the instructions of the court to the jury, thereby affording parties an opportunity to know upon what legal propositions the cause is being disposed of, and, if dissatisfied, to reserve proper exceptions thereto. In such event a bill of exceptions will disclose all legal questions raised in the trial court.
When questions of fact are tried by the court without the intervention of a jury, and when testimony is frequently admitted over the objection of opposing counsel, it is not possible to know whether incompetent testimony is being considered, neither can the *153 views of the trial court upon legal questions be ascertained until the judgment is rendered. If, as in the instant case, the judgment is in general terms without any assignment of the reasons, and without, any discussion of the legal principles, the reviewing-court is entirely in the dark as to whether the case turned upon the facts, or upon the erroneous application of legal principles. Inasmuch as by the provisions of Section 12253, General Code, and the uniform practice of this court, this court will not weigh the testimony to determine whether error intervened in the trial court, it becomes especially important that counsel for the unsuccessful party in the trial court should have some means of determining whether there was a correct application of legal principles. It was to meet this situation that Section 11470 was enacted. The question is squarely presented in the instant case whether the provisions of the section are mandatory, or whether it is entirely discretionary with the trial judge as to whether or not separate findings of fact and law will be made. The record clearly shows that a request was made, and that counsel aided the court by furnishing a list of interrogatories to be answered, and that proper exceptions were taken. An examination of the questions discloses that some of the questions relate only to probative facts, but it is. very clear that answers to the questions would have established facts from which the ultimate material facts could be inferred as a matter of law. In the present state of the record it is impossible for this court to determine whether or not there was an incorrect application of legal principles, and the most this court could do would be to carefully examine the record with a *154 view of weighing the testimony to determine whether a correct judgment had. been rendered. Inasmuch as this eonrt will not take this course, plaintiff in error has been deprived of a substantial right.
There was an early declaration upon the duty of the court under this statute, in the case of Cleveland & Toledo Rd. Co. v. Johnson & Kellogg, 10 Ohio St., 591, from the syllabus of which we quote: “Had the parties proceeded, under the 280th section of the code [now Section 11470, General Code], with a view of excepting to the decision of the court below, upon the questions of law involved in the trial, it would have been the duty of the court to state in writing, both the conclusions of fact and the conclusions of law separately.”
We are mindful that in the case of Oxford Tp. v. Columbia, 38 Ohio St., 87, the court made the following declaration, as found in the syllabus: “Where a party requests that the court state separately the conclusions, of law and fact under the civil code, i 280 (Rev. Stats. § 5205), and the request is not complied with, a judgment against such party should be reversed, unless it appear from the record that he was not prejudiced by the refusal.”
Counsel for the defendant in error stress the last few words above quoted, and insist that in the instant case plaintiff in error had not been prejudiced. It is apparent that by the use of that language the court only had in mind the language of the statute providing for new trial (Section 11576, General Code), in which it is particularly stated in the first sentence of the section that new trials shall only be granted for “causes affecting materially his substantial rights.” The trial court should never grant *155 a new trial, neither should a reviewing court ever reverse, unless there has been some deprivation of á substantial right. We are of the opinion, however, that Section 11470, General Code, does confer a substantial right and that a denial of that right constitutes such error as should cause this court to reverse the judgment, unless it can be determined by this court without weighing the evidence that plaintiff in error has not been prejudiced. Any other view of this section would render its provisions a dead letter. One of the questions in the case was whether Adams was agent for the buyer or seller. If he was agent for the seller, certain testimony admitted was incompetent. If he was the duly authorized agent of the buyer, such testimony was competent and the testimony became determinative of the liability. The question as to whose agent he was thereby became an important probative fact from which there could be but one conclusion as to the ultimate fact of the contract upon which suit was brought. If the contract was established, the uncontradicted testimony shows that there was such breach as to create liability. The conclusion we have reached is therefore that there was a duty on the part of the trial court to answer the interrogatories,- that the failure to do so was the denial of a substantial right, and that the judgment should therefore be reversed and the cause remanded for new trial.

Judgment reversed.

Johnson, Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.